**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**STEPHANIE T. RECKARD,**

**Plaintiff,**

v.                                                                    **Case No: 6:25-cv-1732-DCI**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

**Defendant.**

---

## ORDER

This cause is before the Court on Stephanie T. Reckard's appeal of an administrative decision denying in part an application for Title II Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) for a period of disability beginning on March 2, 2019.  Doc. 15; R. 861; R. 1145 (amending onset date from January 19, 2018 to March 2, 2019).  In a decision dated July 6, 2024, the Administrative Law Judge (ALJ) found Stephanie T. Reckard (Claimant) disabled beginning on December 21, 2020.  R. 860-79.  Claimant now seeks remand so that the ALJ may reconsider the denial of DIB and SSI for the period between March 2, 2019 and December 21, 2020.

Having considered the parties' briefing and being otherwise fully advised, the Court concludes that the Commissioner's decision is due to be **AFFIRMED.**

**I.      ISSUES ON APPEAL**

Claimant raises the following issues on appeal:

1)  Whether the ALJ erred in failing to consider the supportability and consistency of the medical opinion of Dr. Scott M. Kaplan (Doc. 15 at 20-28); and

2)   Whether the ALJ erred in failing to consider the supportability and consistency of the medical opinion of Dr. Jessica Karle, Ph.D.  Doc. 15 at 28-35.

## II.   LEGAL STANDARD

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).  "With respect to the Commissioner's legal conclusions, however, our review is *de novo.*" *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Claimant filed the claim after March 27, 2017, so the revised regulations apply in this action.

The revised regulations require that an ALJ apply the same factors in the consideration of the opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions.   20 C.F.R. §§ 404.1520c(a); 416.920c(a).   The ALJ will assess the persuasiveness of a medical source's opinion in light of five factors: 1) supportability; 2) consistency; 3) relationship with the claimant;[1] 4) specialization and 5) "other factors that tend to

---

[1] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c); 416.920c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Mudge v. Saul*, 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019)).

In this context, "supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and*

3

*recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021). "Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records, and (2) consistent with the other evidence of record." *Tocco v. Comm'r of Soc. Sec.*, 2022 WL 3362863, at *7 (M.D. Fla. July 28, 2022), *report and recommendation adopted*, 2022 WL 337665 (M.D. Fla. Aug. 15, 2022) (citing *Cook*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)).

## III.    DISCUSSION

Claimant argues that the ALJ did not provide "an adequate analysis of the factors of supportability and consistency when evaluating the persuasiveness of the medical opinions and assessing Plaintiff's mental residual functional capacity." Doc. 15 at 18. The Commissioner responds that, "The ALJ properly articulated reasons for finding that the doctors' opinion evidence was unpersuasive." Doc. 20 at 6. As will be explained, the Court finds that the ALJ sufficiently addressed the supportability and consistency of Dr. Kaplan and Dr. Karle's medical opinions.

### A.    Dr. Kaplan

Claimant asserts that the ALJ erred by failing to consider the supportability and consistency of Dr. Kaplan's opinion. Claimant argues that the ALJ "fails to discuss the reasons . . . that Dr. Kaplan gave to support his opinion." Doc. 15 at 22. In response, the Commissioner asserts that "the ALJ thoroughly discussed Dr. Kaplan's medical findings (Tr. 871). 20 C.F.R. § 404.1520c(c)(1) . . . [and that] Plaintiff's argument overlooks that earlier in the decision the ALJ considered the evidence of record and explained how it supported her RFC finding." Doc. 20 at 7-9.

Upon review, the undersigned finds the ALJ's analysis sufficient as to the supportability of Dr. Kaplan's opinion. The ALJ discussed Dr. Kaplan's findings at length:

4

A General Intellectual and Personality Evaluation performed by Dr. Scott M. Kaplan in November 2020 revealed that the claimant's mood and affect appeared depressed. Her thought processes were impaired and included both auditory hallucinations and paranoia. The claimant's concentration and memory were deemed variable (Exhibit 18F/Pages 2, 3). Nevertheless, the claimant was cooperative and oriented in four spheres. There was no evidence of any circumstantiality and/or pressured speech. There was no evidence of any visual hallucinations, delusions, and/or illusions. The claimant denied suicidal and homicidal thinking (Exhibit 18F/Pages 2, 3). Notably, the claimant was administered the Wechsler Adult Intelligence Scale IV (WAIS IV) and obtained a full-scale score of 77, which fell within the borderline range of intellectual functioning (Exhibit 18F/Page/Page 3). However, it was also noted that the claimant's verbal comprehension score, perceptual reasoning score, and working memory score all fell within the low average range. Moreover, the claimant performed within normal limits on vocabulary, nonverbal concept formation, attention, and concentration (Exhibit 18F/Page 3). It bears mentioning, that there was no evidence of any character disorder or personality disorder (Exhibit 18F/Page 3).

. . .

Dr. Scott M. Kaplan recommended formal mental health treatment, psychotropic medications, and individual psychotherapy. According to Dr. Kaplan, the claimant would appear better suited for a traditional vocational training program in an environment emphasizing verbal skills relative to one emphasizing visual motor and hand eye coordination abilities. Moreover, Dr. Kaplan determined that the claimant should not be placed in any high stress, high demand, complex or fast paced environment. Lastly, Dr. Kaplan determined that the claimant would require job training, job placement, guidance and counseling, and career exploration (Exhibit 18F/Page 4).

R. 871, 872. The ALJ considered Dr. Kaplan's November 2020 assessment of Claimant and listed all the findings Dr. Kaplan considered within normal range. *Id.* The ALJ also noted the absence of certain symptoms including visual hallucinations, delusions, illusions, and suicidal and homicidal thinking. *Id.* Accordingly, the ALJ thoroughly reviewed Dr. Kaplan's medical assessment and determined that as of November 2020—one month prior to the December 2020 disability onset date—Dr. Kaplan's own records contained "no evidence of any character disorder

5

or personality disorder (Exhibit 18F/Page 3)." *Id.* The Court considers that assessment sufficient to meet the substantial evidence standard as to supportability.

Embedded within the supportability argument, Claimant argues that notwithstanding the revised regulations, the ALJ was required under *Simon* and *Schink* to determine the "range of fluctuation" of Claimant's symptoms before assessing the consistency of the medical opinions of record. The Court disagrees. *Simon* and *Schink* were decided under the prior regulatory framework, which afforded special deference to treating-source opinions, and the Eleventh Circuit's analysis throughout both decisions flows from the prior regulatory framework. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019). The Eleventh Circuit has since recognized that the revised regulations supersede prior precedent requiring deference to treating physicians. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 894 (11th Cir. 2022) ("The new regulation instructs administrative law judges to give a treating physician's opinion no deference and instead to weigh medical opinions based on their persuasiveness"). Accordingly, the Court declines to read *Simon* and *Schink* as imposing an independent requirement that an ALJ expressly determine the "range of fluctuation" of a claimant's symptoms when evaluating the persuasiveness of a medical opinion under the current regulatory scheme.

Moreover, even assuming the principles discussed in *Simon* and *Schink* remain relevant in evaluating the supportability and consistency of a medical provider's opinion,[2] those decisions do not establish a categorical rule requiring a separate finding regarding symptom fluctuation in every

---

[2] The undersigned notes that Claimant's citation to *Schink* is pulled from the section of the opinion discussing the severity of Schink's mental impairments, not the persuasiveness of his medical providers' opinions. Doc. 15 at 27 (citing *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2019)).

case. Rather, they caution against discounting opinions or allegations of mental impairment severity based solely on isolated observations of normal functioning during periods of improvement. *Simon*, 7 F.4th at 1098 (discussing medical records spanning four years where a treating physician found claimant "had improved" while also noting "In nearly all of these instances" that claimant "continued to suffer from significant symptoms of mental illness"); *Schink*, 935 F.3d at 1267 (noting that "there is little evidence that medication has ever durably improved Schink's condition"). While Claimant contends that the ALJ rejected medical opinions based on a misunderstanding of the episodic nature of mental-health symptoms, the ALJ's decision suggests otherwise. Here, the ALJ arrived at a partially favorable disability determination due in part to the fluctuating nature of Claimant's mental health conditions. *See* R. 877 (The ALJ relied on the opinion of Dr. Malancharuvil in concluding "that the claimant suffered from schizoaffective disorder . . . [and that] the severity of the claimant's impairment meet[ ] listing §12.03 as of December 21, 2020.").

The undersigned also finds the ALJ's analysis sufficient as to the consistency of Dr. Kaplan's opinion. The ALJ's analysis of Dr. Kaplan's opinion included the following:

> The undersigned finds Dr. Kaplan's assessment unpersuasive because it is inconsistent with the medical evidence of record and suggests that the claimant has greater limitations than stated herein. The undersigned finds that the claimant is able to understand, remember, and carry out simple instructions; frequently interact with co-workers and supervisors and occasionally interact with the public; concentrate and persist for simple, routine tasks; and adapt to changes in a simple, routine work setting. However, the record does not support greater limitations because the claimant was oriented and cooperative on examination (Exhibit 1F/Page 6) with a normal mood and affect (Exhibit 2F/Pages 64, 68, 72; Exhibit 4F/Page 3; Exhibit 9F/Pages 3, 6; Exhibit 10F/Page 5). She exhibited normal eye contact (Exhibit 2F/Pages 26, 31, 34, 37, 40, 45, 48, 51). Her memory was intact, her intelligence was average, and her insight and judgment were fair (Exhibit 1F/Page 6; Exhibit 2F/Pages 26, 31, 34, 37, 40, 45, 48, 51; Exhibit 11F/Page 4).

R. 872.  As the excerpt shows, the ALJ considered Dr. Kaplan's evaluation of Claimant along with other treating physicians' examinations where Claimant had: appeared cooperative and oriented, normal mood and affect, normal eye contact, intact memory, average intelligence, and fair insight and judgment.  *Id.*  This assessment alone is sufficient.  But later in the decision—when discussing the period after which Claimant became disabled—the ALJ explained that she found the opinions of several physicians—including Dr. Kaplan's opinion—"unpersuasive as of the established onset date because the opinion of Dr. Malancharuvil is more consistent with the record[.]"  R. 878.  Put another way, the ALJ found that: 1) other contemporaneous medical records conflicted with Dr. Kaplan's assessment; and 2) the onset date Dr. Kaplan relied on is less consistent with the record than the onset date identified by Dr. Malancharuvil.  Accordingly, the ALJ adequately considered the consistency of Dr. Kaplan's opinion with the record evidence.

Claimant further argues that the ALJ's consistency analysis is flawed because the ALJ relied on medical opinions from providers evaluating Claimant for concerns that "had nothing to do with mental health treatment."  Doc. 15 at 23.  Claimant asserts that "the mental health treatment records are remarkably consistent."  *Id.* 24.  But Claimant cites no legal authority in support of the proposition that the ALJ should have given greater weight to Dr. Kaplan's opinion.  *See generally*, Doc. 15.  And as other courts have recognized, the Social Security regulations "do not limit the ALJ to consideration of only Plaintiff's mental health providers.  To the contrary, they instruct the ALJ to 'consider all evidence in [Plaintiff's] case record' and to 'not defer or give any specific evidentiary weight, including controlling weight,' to Plaintiff's treating physicians.  20 C.F.R. §§ 404.1520, 404.1520c(a)."  *Battie v. Kijakazi*, No. 20-24444-CIV, 2022 WL 4000728, at *5 (S.D. Fla. Aug. 9, 2022), *report and recommendation adopted sub nom. Battie v. Comm'r of Soc. Sec.*, No. 20-24444-CIV, 2022 WL 3975093 (S.D. Fla. Sept. 1, 2022).  Ultimately, the ALJ found

another medical provider's assessment more persuasive. *See.* R. 878 (finding that "the opinion of Dr. Malancharuvil is more consistent with the record"). To the extent Claimant contends the ALJ should have weighed certain evidence or providers' opinions differently—that is re-weighing the evidence, and the Court is not in a position to do so. *See Baker v. Comm'r of Soc. Sec.*, No. 6:22-CV-1179-EJK, 2023 WL 4946510, at *4 (M.D. Fla. Aug. 3, 2023) (noting that "reweigh[ing] the evidence . . . is not within the province of this Court.").

### B.    Dr. Karle

With respect to Dr. Karle's opinion, Claimant argues that the ALJ gave an "inadequate rationale" when she found Dr. Karle's opinion unpersuasive. Doc. 15 at 30. The Commissioner responds that the ALJ adequately addressed the supportability and consistency of Dr. Karle's opinion and that Claimant's brief invites the Court to re-weigh evidence in contravention of the regulations. Doc. 20 at 9-12. Upon review, the undersigned finds that the ALJ sufficiently addressed the supportability and consistency of the Dr. Karle's opinion.

As to supportability, the undersigned notes that the ALJ wrote at length about Dr. Karle's assessments of Claimant. *See* R. 874 (discussing Dr. Karle's medical opinion over several paragraphs). Claimant even concedes that, "Here, the ALJ is actually considering the supportability of Dr. Karle's opinion," but Claimant disagrees with how the ALJ weighed the opinion, noting that "the ALJ cites clinical findings that are neutral; i.e. they neither support nor contradict Dr. Karle's opinion." Doc. 15 at 31. But under the substantial evidence standard, a court will not disturb an ALJ's decision simply because the evidence might support an alternative interpretation. *See* 42 U.S.C. § 405(g) ("The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive"); *Mendoza v. Comm'r of Soc. Sec.*, No.

8:23-CV-00229-NHA, 2024 WL 706089, at *6 (M.D. Fla. Feb. 21, 2024) ("this Court cannot reverse an ALJ's decision simply because the evidence could support a different finding.").

Further, the ALJ addressed how Dr. Karle's opinion regarding Claimant's limitations was not supported by contemporaneous treatment records (Exhibit 11F) where Dr. Karle also found: "claimant was alert, oriented, and maintained good eye contact; she was cooperative and her speech was within normal limits and that the claimant's memory was intact for recent and remote events and her fund of knowledge was fair." R. 873.  Claimant contends that "none of these clinical findings are relevant to Dr. Karle's opinion" and the ALJ "does not consider" Dr. Karle's "explanation given to support her opinion." Doc. 15 at 31 (citing R. 845-46).  In fact, the medical report Claimant refers to—Exhibit 19F—is cited by the ALJ three times in his discussion of Dr. Karle's medical opinion.  *See* R. 873.  There, the ALJ contrasts Dr. Karle's findings in the September 2020 examination (Exhibit 11F, R. 659-63) with Dr. Karle's findings in September 2021 (Exhibit 19F, R. 845-47) and June 2024 (Exhibit 23F).  And while the ALJ does mention Claimant's noncompliance with medication at the September 2020 examination as part of her reasoning in finding Dr. Karle's opinion unpersuasive, the ALJ does not base the disability determination on treatment noncompliance nor cite treatment noncompliance as the primary reason for finding Dr. Karle's opinion inconsistent.[3]  *See* R. 873.  Rather, the ALJ concluded the consistency analysis with the following:

---

[3] Claimant's argument concerning the ALJ's failure to "make a failure to follow prescribed treatment determination" is unpersuasive.  Doc. 15 at 32-34.  Claimant cites SSR 18-3p for the proposition that the ALJ did not comply with SSA regulations in making "a failure to follow prescribed treatment determination" (Doc. 15 at 32), but it is not clear to the Court—and Claimant's briefing does not explain—why the ALJ would be required to make such a finding. Here, the ALJ did not make a disability determination—let alone make the consistency determination—based on Claimant's treatment noncompliance.  *See Allen v. Comm'r of Soc. Sec.*, No. 618CV01806ORLDCI, 2020 WL 263665, at *5 (M.D. Fla. Jan. 17, 2020) (rejecting claimant's

10

> Moreover, the undersigned notes that while Dr. Karle documented mental deficits on the September 2020 examination, the claimant had been non-complaint with her prescribed medication for the last six months (Exhibit 11F/Page 6).  The record reflects that when the claimant is compliant, prescribed medications help with paranoia, ability to focus (Exhibit 2F/Page 1), and to calm her anxiety (Exhibit 11F/Page 14).  Lastly, the undersigned notes that Dr. Karle's opinion is inconsistent with her own evaluation of the claimant, which documented that the claimant was alert, oriented, and maintained good eye contact; she was cooperative, and her speech was within normal limits; and that the claimant's memory was intact for recent and remote events, and her fund of knowledge was fair (Exhibit 11F/Page 4).

R. 873.  In short, the ALJ concluded that the September 2020 treatment notes reflected greater functioning than the post-hoc September 2021 questionnaire assessing Claimant's "Mental Abilities and Aptitudes Needed to do Unskilled Work."  R. 845.  This analysis is sufficient to support the ALJ's decision as to the supportability of Dr. Karle's opinion.

With respect to consistency, Claimant reiterates the same arguments made regarding Dr. Kaplan's opinion.  Doc. 15 at 32 ("The ALJ uses the same arguments detailed above when finding Dr. Kaplan's opinion unpersuasive . . . See Plaintiff's argument supra that addresses all of these issues.").  Later, Claimant suggests that the ALJ failed to "articulate why Dr. Karle's opinion is inconsistent with other medical sources," and Claimant notes that her "treating counselors, Jessica Kroungold-King and Bethany McQueen confirmed the above findings and opinion of Dr. Karle." *Id.* at 34-35.  But the ALJ did articulate why Dr. Karle's opinion is inconsistent with other medical sources:

> However, the record does not support greater limitations, like the limitations set forth by Dr. Karle, because the claimant was oriented and cooperative on examination (Exhibit 1F/Page 6) with a normal mood and affect (Exhibit 2F/Pages 64, 68, 72; Exhibit 4F/Page 3; Exhibit 9F/Pages 3, 6; Exhibit 10F/Page 5). She exhibited normal eye contact (Exhibit 2F/Pages 26, 31, 34, 37, 40, 45, 48, 51). Her

reliance on failure to follow prescribed treatment caselaw where the ALJ did not deny benefits on noncompliance grounds).

11

> memory was intact, her intelligence was average, and her insight and judgment were fair (Exhibit 1F/Page 6; Exhibit 2F/Pages 26, 31, 34, 37, 40, 45, 48, 51; Exhibit 11F/Page 4).

R. 873.  Later in the ALJ's decision, the ALJ again referenced Dr. Karle's opinion in comparison with the opinion of Dr. Malancharuvil.  *See* R. 878.  Specifically, the ALJ reasoned:

> The undersigned finds that the opinions provided by Dr. Lace (Hearing Testimony), Dr. Kaplan (Exhibit 18F), and Dr. Karle (Exhibit 19F) are unpersuasive as of the established onset date because the opinion of Dr. Malancharuvil is more consistent with the record and evidence received at the hearing level shows the severity of the claimant's schizoaffective disorder meets listing §12.03 as of the established onset date.

*Id.*  At the hearing, Dr. Malancharuvil served as a medical expert and disagreed with at least two of Dr. Karle's conclusions.  *See* R. 900- First, Dr. Malancharuvil opined that—despite Dr. Karle's bipolar disorder diagnosis in Exhibit 11F—"the schizoaffective diagnosis seems to be the better fit at this point. . . . So, overall, I think at this point she meets the requirements of the listings."  R. 902.[4]  Second, Dr. Malancharuvil disagreed with the Dr. Karle as to the onset date by which Claimant met the listing criteria—Dr. Malancharuvil felt "comfortable putting a date of December of 2020" as opposed to the alleged onset date of January 10, 2018."  R. 904.  After Dr. Malancharuvil gave his opinion, Claimant asked to amend the alleged onset date to January 14, 2019 based on Dr. Karle's assessment at Exhibit 19F.  R. 904-06.  The ALJ then asked Dr. Malancharuvil whether the evidence supported the January 14, 2019 onset date, and Dr. Malancharuvil found that it did not.  R. 907.  Specifically, Dr. Malancharuvil opined:

> . . . but the form is signed in September of 2021. That's the date – I am concerned and, prior to that, it is an opinion given backwards, . . . So, I don't feel comfortable with the form. Exhibit 19F she signed

---

[4] The undersigned notes that Claimant does not take issue with the ALJ's conclusion on this point of disagreement between Dr. Malancharuvil and Dr. Karle because it is an integral part of the ALJ's favorable disability determination with an onset date of December 2020.

> in September of '21 which is actually one year after that is what I am suggesting.
>
> Q [ALJ]. So, you said it met the listing as of December 21st, 2020. So, prior to that date, what would the B criteria be?
>
> A [Dr. Malancharuvil] And that there's no compelling evidence to suggest any marked limitations. That the marked limitations I had marked mainly because of 19F . . .

*Id.* Based on this exchange at the hearing, the ALJ's decision reflects that the ALJ found "the opinion of Dr. Malancharuvil is more consistent with the record[.]" R. 878. Accordingly, the Court also finds that the ALJ addressed the consistency of Dr. Karle's opinion.

## IV.   CONCLUSION

Throughout the briefing, Claimant repeatedly invites the Court to accept the evidence found elsewhere in the record, reject the evidence the ALJ relied upon, and reach a different conclusion regarding the persuasiveness of Dr. Kaplan and Dr. Karle's opinions. *See generally*, Doc. 15. As courts in this district have repeatedly held: "While Claimant may not agree with the ALJ's decision, a court cannot reweigh the evidence." *See Mercer v. Comm'r of Soc. Sec.*, 2024 WL 1597706, at *5 (M.D. Fla. Apr. 12, 2024) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004)).

Accordingly, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**ORDERED** in Orlando, Florida on June 22, 2026.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

13